**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aimee Farsakian,<br><br>        Plaintiff,<br><br>v.<br><br>David Kent, et al.,<br><br>        Defendants. | No. CV-20-00141-PHX-MTL<br><br>**ORDER** |

Plaintiff Aimee Farsakian moves for default judgment against Defendants David Kent, D.O. ("Dr. Kent"), Phoenix Sands Surgical Associates, PLLC ("Phoenix Sands"), Renew Medical Management, LLC ("Renew Medical"), Quantum Ventures Holdings, LLC ("Quantum Holdings"), Quantum Ventures, LLC ("Quantum Ventures"), and Quantum Business Solutions, LLC ("Quantum Business") (collectively, "Defendants"), pursuant to Fed. R. Civ. P. 55(b)(2). Defendants have not appeared or filed any responses. For the reasons discussed below, the motions for default judgment are granted; Ms. Farsakian is awarded $735,067.53 in damages.

**I.      BACKGROUND**

Ms. Farsakian filed her original Complaint on January 20, 2020. (Doc. 1.) She filed a First Amended Complaint ("FAC") on February 24, 2020. (Doc. 9.) The FAC asserts six claims against all defendants: (1) hostile work environment under Title VII, (42 U.S.C. § 2000(e-2)(a)); (2) retaliation under Title VII (42 U.S.C. § 2000(e-3)); (3) sexual harassment in violation of the Arizona Civil Rights Act ("ACRA") (A.R.S. § 41-1463); (4)

retaliation in violation of ACRA; (5) violation of the Arizona Employment Protection Act ("AEPA") (A.R.S. § 23- 1501); and (6) intentional infliction of emotional distress ("IIED"). (Doc. 9.) Plaintiff has received Notices of Right to Sue for each charge from the EEOC. (*Id*. ¶ 27).

All facts alleged in the FAC (except as to damages) are assumed to be true. *See Geddes v. United Fin. Grp*., 559 F.2d 557, 560 (9th Cir. 1977). Around September 2018, Ms. Farsakian was hired by Phoenix Sands and Renew Medical as a sales representative. (Doc. 9 ¶ 10.) Quantum Venture Holdings, Quantum Ventures, and Quantum Business subsequently acquired and operated Phoenix Sands and Renew Medical. (*Id*. ¶ 12.) Collectively, the Quantum entities "employ over 500 people." (*Id*.) Dr. Kent is the owner, managing member, and medical director of Phoenix Sands and Renew Medical. (*Id*. ¶ 11.) He was Ms. Farsakian's supervising physician. (*Id*. ¶ 13.)

In December 2018, Dr. Kent texted Plaintiff "photographs of himself standing in front of a mirror, naked from the waist down, with a hand covering his genitals, or without a shirt on." (*Id*. ¶ 14.) Ms. Farsakian received "five such photographs" along with obscene text messages. (*Id*. ¶ 15.) Other sexual advances followed, as Dr. Kent telephoned "or FaceTimed" Plaintiff "twice a day for approximately three months." (*Id*. ¶¶ 16-17.) These "photographs, text messages, phone calls and offers were unwelcomed, unsolicited and continued for approximately four months." (*Id*. ¶ 18.) They made Ms. Farsakian "feel uncomfortable and caused her severe stress and fear of losing her job." (*Id*. ¶ 19). Dr. Kent "specifically indicated" to Ms. Farsakian that "it would be in [her] best interest" to see him or allow him to visit her, which she felt was "a threat to her employment with Defendants." (*Id*. ¶ 20.) Ms. Farsakian told Dr. Kent to "stop contacting her" at the end of March 2019. (*Id*. ¶ 21.)

While selling Defendants' "ezFIRM facial firming (lift) procedure" and "ez fill/fat Stem Cell transfer," Ms. Farsakian became aware of what she asserts are false claims regarding the use of stem cells in the treatments. (*Id*. ¶ 22.) On April 17, 2019, she "mentioned" to the Vice President of Marketing that she was "uncomfortable" with the

"false and misleading" advertisements and representations. (*Id.* ¶ 23.) Ms. Farsakian alleges that because she reported Dr. Kent's sexual harassment and refused to continue making false and misleading representations, she was terminated on April 18, 2019. (*Id.* ¶ 25.)

All defendants were timely served with the Summons and FAC.[1] (Docs. 8, 10, 11, 12, 13 17.) Defendants have failed to file an answer, a motion to dismiss, or any other response. Upon Ms. Farsakian's application (Docs. 20, 22-25, 32), the Clerk of the Court entered default against each defendant. (Docs. 21, 26, 33.) Ms. Farsakian subsequently filed the pending motions for default judgment. (Docs. 27-31, 34.) No responses have been filed. The Court held a damages hearing on October 27, 2020. (Doc. 39.) Ms. Farsakian submitted a supplemental brief to the Court in advance of the hearing. It asserts that she seeks a total of $736,041.43 in damages. (Doc. 37.) Ms. Farsakian also submitted an affidavit and accompanying exhibits. (Doc. 37-1.)

## II.   LEGAL STANDARD

Once a default has been entered, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The court may consider several factors, including (1) the possibility of prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy favoring a decision on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In applying the *Eitel* factors, the factual allegations of a complaint, apart from damages, are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The moving party has the burden to prove all damages. *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

---

[1] At oral argument, Plaintiff's counsel asserted that he has been in contact with Dr. Kent and his counsel, and that Dr. Kent has acknowledged that he and at least the Quantum entity defendants have been served. Plaintiff's counsel further stated that his most recent conversation with Dr. Kent's counsel was less than a week before the hearing, at which time Dr. Kent's counsel stated that they had made the strategic decision not to appear and defend this lawsuit.

**III. DISCUSSION**

**A. The first, fifth, sixth, and seventh *Eitel* factors**

In a case such as this, where the defendants have not participated in the litigation, the "first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. 2020). The first factor weighs in favor of default judgment because denying Plaintiff's motions will leave her "without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The fifth factor is satisfied. Because all well-pleaded facts in the FAC are taken as true, there is no "genuine dispute of material facts" that would preclude granting the motions. *Id.* Similarly, the sixth factor is satisfied; because Defendants were properly served, it is unlikely that their failure to answer was a result of excusable neglect. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006). And while generally the seventh *Eitel* factor weighs against default judgement, the existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. The Court finds that this factor is not sufficient to preclude the entry of default judgment.

**B. The second and third *Eitel* factors**

The second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint—are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). As described below, Plaintiff has adequately alleged each of her claims.

**i. Hostile Work Environment (Title VII)**

A "hostile work environment" occurs under Title VII when: (1) a plaintiff is subjected to verbal or physical conduct of a harassing nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016); *Draper v.*

*Coeur Rochester, Inc.*, 147 F.3d 1104, 1108 (9th Cir. 1998). The harassment must be both subjectively and objectively abusive. *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir.1995).

Here, taking the FAC's allegations as true, Ms. Farsakian claims that she was subject to unwarranted sexual advances for approximately four months, which left her "uncomfortable" and worried about losing her job. (Doc 9. ¶¶ 18-19.) She found this behavior abusive, and states that a reasonable person would have, as well. (*Id*. ¶ 35.) The Court, upon review of the photographs and text messages attached to Ms. Farsakian's affidavit, agrees. (Doc. 37-1.) Plaintiff has stated a claim that pervasive sexual harassment created a hostile work environment under Title VII.

### ii.     Retaliation (Title VII)

An employer has unlawfully retaliated against an employee under Title VII if it has discriminated against said employee for "oppos[ing] any practice made an unlawful employment practice." 42 U.S.C. § 2000(e-3)(a). The employment action must have been "materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). A plaintiff must prove her case with but-for causation, proving that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Here, firing Ms. Farsakian was a materially adverse action. She has alleged that but for her reports of Dr. Kent's sexual harassment, she would not have been fired. (Doc. 9 ¶¶ 40-48.) Ms. Farsakian has stated a claim for retaliation under Title VII.

### iii.     Retaliation and Sexual Harassment (ACRA)

The ACRA is "'modeled after and is generally identical' to Title VII of the Civil Rights Act." *Arizona ex rel. Horne*, 816 F.3d at 1198 (citing *Ariz. Civil Rights Div. v. Hughes Air Corp.*, 139 Ariz. 309, 678 P.2d 494, 497 (App.1983)). Accordingly, "federal Title VII case law [is] persuasive in the interpretation of [the ACRA]." *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004) (citation omitted). Because Ms. Farsakian has sufficiently pled claims for hostile work environment and retaliation under Title VII, she

has sufficiently pled her claims under the ACRA.[2] Ms. Farsakian is "not seeking monetary or other relief under the ACRA." (Doc. 37 at 6.)

### iv. Retaliation (AEPA)

An employer violates the AEPA by firing an employee for refusing to take an action that would violate the Arizona Constitution or an Arizona statute. A.R.S. § 23-1501(3)(c)(i), (ii). A former employee may bring a "wrongful termination action in Arizona" under the AEPA. *Galati v. Am. W. Airlines, Inc.*, 205 Ariz. 290, 292 (Ct. App. 2003). To state a prima facie case of retaliation under the AEPA, a plaintiff must show "(1) that [s]he engaged in a protected activity, (2) that [s]he suffered an adverse employment action, and (3) that there is a causal link between the two." *Whitmire v. Wal-Mart Stores Inc.*, 359 F. Supp. 3d 761, 796 (D. Ariz. 2019) (citation omitted). Here, Ms. Farsakian alleges that Defendants' false representations about its services violated the Arizona Consumer Fraud Act, A.R.S. § 44-1522. (Doc. 37 at 4.) She also asserts that she reported these violations to her immediate supervisor. (Doc. 37-1 ¶¶ 16-18.) Ms. Farsakian claims that she "was terminated in retaliation for her reporting the foregoing." (Doc. 9 ¶ 25; Doc. 37 at 7.) She has accordingly stated a claim for retaliation under the AEPA.

### v. Intentional Infliction of Emotional Distress

A plaintiff alleging IIED under Arizona law must demonstrate three elements: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to cause emotional distress or "recklessly disregarded the near certainty" that the conduct would produce such distress; and (3) the defendant's conduct actually caused severe emotional distress. *Bodett*, 366 F.3d at 746. *See also Ford v. 747 Revlon, Inc.*, 153 Ariz. 38, 43 (1987). An employer is only liable for IIED under Arizona law when "a company utterly fails to investigate or remedy the situation." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1059 (9th Cir. 2007). Cases with "a sufficient finding of outrageousness" to

---

[2] Although Count 1 is for hostile work environment under Title VII and Count 3 is for sexual harassment under the ACRA, sexual harassment is a type of hostile work environment under Title VII. *See Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) ("Sexual harassment falls into two major categories: hostile work environment and quid pro quo.").

- 6 -

support an IIED claim "contain stark and repulsive facts that strike at very personal matters." *Demetrulias v. Wal-Mart Stores Inc.*, 917 F. Supp. 2d 993, 1012 (D. Ariz. 2013).

Whether a plaintiff has suffered sufficiently severe emotional distress is analyzed on a case-by-case analysis under Arizona law. *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 716 P.2d 1013, 1016 (Ariz. 1986). A physical injury need not occur. *Pankratz v. Willis*, 744 P.2d 1182 (Ariz. Ct. App. 1987). But a "line of demarcation should be drawn between conduct likely to cause mere 'emotional distress' and that causing 'severe emotional distress.'" *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 501 (Ariz. Ct. App. 1982) (citation omitted). *See also Coffin v. Safeway, Inc.*, 323 F. Supp. 2d 997, 1004 (D. Ariz. 2004) (plaintiff sufficiently pled emotional distress by alleging she suffered "humiliation, mental anguish and emotional and physical distress of mind and body in the form of fear, shock, anger, worry, humiliation, nervousness, irritability, insomnia, [and] loss of appetite").

Here, Ms. Farsakian alleges unwanted sexual harassment over a period of months. (Doc. 9 ¶¶ 14, 16-18.) Dr. Kent's alleged text messages are aggressive and offensive. The Court is satisfied that the explicit photos and messages, and their asserted frequency, rise to the level of "outrageousness" sufficient to sustain an IIED claim. (*Id.* ¶ 15.) Ms. Farsakian's affidavit also states that Dr. Kent's conduct made her feel "terrified," that she could be fired at any moment, and that she came home crying after interacting with a supervisor. (Doc. 37-1 ¶¶ 12, 21.) She was also "unable to eat," (*Id.* ¶ 22), "lost approximately fifteen pounds, reducing [her] body mass index to unhealthy levels, because [she] felt so sick to [her] stomach." (*Id.* ¶ 23). Based on these allegations, Ms. Farsakian has stated an IIED claim.

### C. The fourth *Eitel* factor

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendants' conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored. *See Twentieth Century Fox Film Corp.*, 438 F. Supp. 2d at

1071. In contrast to the other allegations in a complaint, allegations pertaining to damages are not taken as true when considering a motion for default judgment. *Fair Housing of Marin*, 285 F.3d at 906. Nonetheless, a district court has "wide latitude" in determining the amount of damages to award upon default judgment. *James v. Frame*, 6 F.3d 307, 310 (9th Cir. 1993).

Here, Ms. Farsakian seeks a total of $736,041.43 in back wages, compensatory and punitive damages, and attorney's fees and costs. (Doc. 37 at 15.) As discussed below, the Court will award the requested damages (with the exception of her taxable costs). The amount of money at stake in relation to Ms. Farsakian's claims is appropriately proportionate and the amount does not weigh against granting default judgment. *Twentieth Century Fox Film Corp.*, 438 F. Supp. 2d at 1071.

Upon review of the *Eitel* factors, Ms. Farsakian is entitled to default judgment on each of her claims.

### D. Damages

The Court now turns to the matter of damages. Plaintiff seeks a total of $736,041.43 in damages: $11,126.03 in back wages under Title VII; $250,000 in compensatory and punitive damages under Title VII; $250,000 under the AEPA; $200,000 for IIED; and $24,915.40 in legal fees and costs. (Doc. 37 at 14-15.)

#### 1. Back Wages (Title VII)

Plaintiff seeks $11,126.03 as back wages under Title VII against Defendants Phoenix Sands, Renew Medical, Quantum Holdings, Quantum Ventures, and Quantum Business (the "Entity Defendants"), jointly and severally.[3] Victims of discrimination are entitled to back pay under Title VII. 42 U.S.C. § 2000e–5(g) (1994); *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1020 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 2, 2000). The purpose of equitable relief under Title VII is to "make the victims of unlawful discrimination whole." *Id.* (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 230 (1982)). A plaintiff seeking back pay has a duty to mitigate damages by seeking alternative

---

[3] Individual defendants cannot be held liable for damages under Title VII. *See De La Torre v. Merck Enterprises, Inc.*, 540 F. Supp. 2d 1066, 1079 (D. Ariz. 2008).

employment with reasonable diligence. *Id.*

Here, Ms. Farsakian asserts that although she diligently searched for alternative employment, she spent 140 days without work.[4] (Doc. 37, Ex. 1, ¶¶ 24, 41.) She asserts that she is owed $10,126.03 (calculated by a daily rate of $72.33 multiplied by 140 days). (Doc. 37 at 10). *See Eichenberger v. Falcon Air Exp. Inc.*, No. CV-14-00168-PHX-DGC, 2015 WL 3999142, at *6 (D. Ariz. July 1, 2015) (calculating back wages based on the plaintiff's affidavit). She also seeks $500 in additional expenses to purchase clothes for job interview and appointments, and for $500 for gas and mileage to travel to them. (*Id.*) Although Ms. Farsakian has not provided specific authority for these additional expenses, the Court recognizes that reimbursement of these expenses will serve Title VII's stated goals of making Ms. Farsakian "whole" following her termination. *Caudle*, 224 F.3d at 1020. Therefore, the Court grants back pay in the amount of $11,126.03.

### 2.  **Compensatory and Punitive Damages (Title VII)**

Ms. Farsakian also seeks $100,000 in punitive damages and $150,000 in compensatory damages under Title VII against the Entity Defendants, jointly and severally. Victims of discrimination are entitled to compensatory and punitive damages. 42 U.S.C. § 1981a(b). Further, under Title VII, a plaintiff may recover punitive damages if she demonstrates that the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). An employer may be vicariously liable for punitive damages "where a supervisor who did not actually perpetrate the harassment but nonetheless was responsible under company policy for receiving and acting upon complaints of harassment, failed to take action to remedy the harassment." *Swinton v. Potomac Corp.*, 270 F.3d 794, 810 (9th Cir. 2001). Title VII "limits compensatory and punitive damages based on the size of the defendant corporation." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1195 (9th Cir. 2002). For a plaintiff suing a company with more than

---

[4] Ms. Farsakian's unemployment ended when she was hired by a company called IFG on September 20, 2019. At oral argument, Ms. Farsakian's counsel clarified that her base salary at IFG was $3,750 per *month*, as opposed to per year, as stated in her affidavit. (Doc. 37-1 ¶ 42.)

1 500 employees, as Ms. Farskaian alleges is true of Defendants, damages are capped at
2 $300,000. *Id.*; 42 U.S.C. § 1981a(b)(3)(D).

The Court finds that Ms. Farsakian's requested damages are appropriate. Plaintiff alleges that Dr. Kent's sexual harassment created a hostile workplace in violation of Title VII. (Doc. 9 ¶ 31.) Her employer failed to take action to remedy the sexual harassment after being informed; in fact, as Ms. Farsakian alleges, it fired her upon receiving notice of Dr. Kent's harassment. (*Id.* at ¶ 38.) Ms. Farsakian also seeks damages below the $300,000 statutory cap. (Doc. 37 at 10). Therefore, the Court grants Ms. Farsakian's requested compensatory and punitive damages in the total amount of $250,000.

### 3. AEPA damages

Plaintiff seeks $250,000 in damages for violation of AEPA against all Defendants, jointly and severally. (Doc. 37 at 14.) She notes that although Dr. Kent cannot be liable for damages under Title VII, he can be under the AEPA. *See* A.R.S. § 23-1501(A)(3)(b) (permitting an employee to "bring a tort claim for wrongful termination in violation of the public policy set forth in the statute"); *Higgins v. Assmann Elecs., Inc.*, 217 Ariz. 289, 294 ¶ 13 (Ct. App. 2007) (affirming liability for both employer entity and individual supervisor under the AEPA). Plaintiff requests $250,000 based on Defendants' "retaliatory conduct after Ms. Farsakian spoke out about Defendants['] misleading claims." (Doc. 37 at 13.) As counsel noted at the damages hearing, there is no statutory cap on AEPA damages. The Court finds, in its discretion, that a $250,000 award is reasonable based on Ms. Farsakian's allegations of Defendants' retaliatory actions.

### 4. Intentional Infliction of Emotional Distress

Ms. Farsakian seeks $200,000 in damages for IIED against Dr. Kent. (Doc. 37 at 14.) At oral argument, Ms. Farsakian's counsel asserted that this amount is appropriate based on several portions of her affidavit, including an assertion that she was "terrified that if [she] did not flirt back with Dr. Kent, [she] could be fired at any point." (Doc. 37-1 ¶ 12.) Ms. Farsakian's affidavit also states that Dr. Kent told her that "it would be in [her] best interest to continue talking to him and allow him to visit [her]." (*Id.* ¶ 13.) Ms. Farsakian

took this "as a direct threat to [her] employment." (*Id*.) Dr. Kent's conduct also left her "unable to eat." As a result, she lost approximately 15 pounds. (*Id*. ¶ 22-23.) Ms. Farsakian's counsel also emphasized that, following her termination, she applied to 60 jobs without success and is "now very wary of men" and afraid of being deemed a whistleblower. (*Id*. ¶ 32-35.)

The Court, upon consideration of Ms. Farsakian's submitted materials and the arguments of her counsel at oral argument, finds $200,000 to be a reasonable damages award for her IIED claim.

### 5. Legal Fees and Costs

A court may allow the "prevailing party" a "reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Prevailing parties include those who obtain a default judgment in a civil rights action. *See Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018); *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992) (A prevailing party is a plaintiff who obtains "at least some relief on the merits of his claim."). The dominant method for calculating reasonable fee is the lodestar method. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002). The lodestar amount is calculated by multiplying "the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012) (per curiam) (alteration omitted).

The Court has reviewed the affidavit of counsel, including the itemized report of the hours of work expended on this litigation. (Doc. 37-2.) At oral argument, Ms. Farsakian's counsel asserted that any time entries made by legal assistants were for work that would be appropriately completed by a paralegal. The Court finds an award of $23,929.50 in attorney's fees to be reasonable.[5]

Plaintiff also seeks $985.90 in costs. (Doc. 37-2 at 10-11.) Under Fed. R. Civ. P. 54(d)(1), "costs—other than attorney's fees—should be allowed to the prevailing party" unless "a federal statute, these rules, or a court order provides otherwise[.]" The costs of

---

[5] At one point in the Affidavit for Attorneys' Fees and costs, Ms. Farsakian's counsel states that he seeks fees in the amount of $14,722.40. (Doc. 37-2 ¶ 10.) Based on the remainder of the affidavit and Plaintiff's briefing, the Court understands this to be an error.

- 11 -

litigation are grouped as taxable and non-taxable. Filing fees and private process servers' fees are taxable costs according to Rule 54.1(e) of the Local Rules of Civil Procedure. *See Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 480 (D. Ariz. 2019). Photocopies are generally not taxable under the Local Rules. Accordingly, the Court will grant the $12.00 incurred for "outside photocopies." To recover the filing fees and service of process fees, Plaintiff shall file a Bill of Costs on the form provided by the Clerk of the Court within 14 days after entry of judgment as required by LRCiv 54.1(a).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Applications for Entry of Default Judgment by the Court are **granted**. (Docs 27, 28, 29, 30, 31, 34.)

**IT IS FURTHER ORDERED** awarding Plaintiff **$11,126.03** in back pay, **$100,000** in punitive damages, and **$150,000** in compensatory damages, under Title VII, against Defendants Phoenix Sands Surgical Associates, PLLC; Renew Medical Management, LLC; Quantum Ventures Holdings, LLC; Quantum Ventures, LLC; and Quantum Business Solutions, LLC, jointly and severally.

**IT IS FURTHER ORDERED** awarding Plaintiff **$200,000** in damages for intentional infliction of emotional distress against Defendant David Kent, D.O.

**IT IS FURTHER ORDERED** awarding Plaintiff **$250,000** in damages under the AEPA, plus **$23,929.50** in attorney's fees and **$12.00** in costs, against all Defendants, jointly and severally.

**IT IS FURTHER ORDERED** awarding Plaintiff post-judgment interest at the applicable federal rate pursuant to 28 U.S.C. § 1961(a).

**IT IS FINALLY ORDERED** directing the Clerk of the Court to close this case and to enter judgment accordingly.

Dated this 28th day of October, 2020.

Michael T. Liburdi
United States District Judge